IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>*v.*<br><br>302,477.727217 USDT SEIZED FROM WALLET ADDRESS ENDING YFPP,<br><br>DEFENDANT. | Civil Action No. |

**VERIFIED COMPLAINT FOR FORFEITURE**

NOW COMES Plaintiff United States of America, by Theodore S. Hertzberg, United States Attorney, and Nicholas L. Evert, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

**NATURE OF THE ACTION**

1. This is a civil forfeiture action against 302,477.727217 USDT[1] (the "Defendant Property") seized from wallet address TEiC4ms3ZaMcEkRGuwBtDADkT6oJqpYFPP (the "Subject Address") as proceeds of a fraudulent scheme to steal cryptocurrency.

[1] 302,477.727217 USDT is worth approximately $302,477.73 in U.S. dollars (USD).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. The Defendant Property is presently being held in a digital wallet maintained by the United States.

## BASIS FOR FORFEITURE

### Relevant Statutes

6. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud).

7. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1341 (mail fraud).

8. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that it constitutes property, real or personal, involved

in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

## <u>Factual Background</u>

9. An investigation by the Federal Bureau of Investigation (FBI) revealed the following:

*Relevant Definitions*

10. **Virtual currencies** are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are generally not issued by any government or bank like traditional fiat currencies such as the U.S. dollar, but are generated and controlled through computer software.

11. **Tether (USDT)**, **Ripple (XRP)**, **Lumen (XLM)**, and **Bitcoin (BTC)** are virtual currencies.

12. Tether Limited is a company that, among other things, manages the treasury (*i.e.*, the funds held in reserve) for USDT tokens. Unlike many other cryptocurrencies, USDT is centralized, meaning that it is issued and controlled by a governing body.

13. Virtual currencies such as USDT, XRP, XLM, and BTC are sent to and received from their respective **virtual currency addresses**. An address is somewhat analogous to a bank account number and is represented as a 26-to 35-character case-sensitive string of letters and numbers.

14. Each virtual currency address is controlled through the use of a unique corresponding **private key**, a cryptographic equivalent of a password needed to access the address. Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address.

15. A **virtual currency wallet** is a software application that generates and stores a user's virtual currency address(es) and private key(s). A virtual currency wallet also allows users to send and receive virtual currencies.

16. **Ledger** is a company that provides virtual currency wallets.

17. A cryptocurrency **bridge** allows users to convert one cryptocurrency to another.

18. **QR codes** (short for Quick Response codes) are two-dimensional square barcodes that store encoded data, such as the link to a website. QR codes can be scanned with a smartphone. When a user scans a QR code, they gain immediate access to the encoded content. For example, a user who scans a QR code might be sent to a particular website.

*Victim PO*

19. At all relevant times, PO resided in the Northern District of Georgia.

20. On or about September 28, 2025, PO received a letter via U.S. mail that purported to be from Ledger, where he had a virtual currency wallet. The letter claimed that his wallet required an update and provided a QR code to be scanned

to access the update.

21. When PO scanned the QR code, he was prompted to enter the passphrase for his virtual currency wallet.

22. Believing that he was following instructions from a legitimate source, PO entered his passphrase.

23. Soon after PO entered his passphrase, more than approximately $286,000 USD worth of XRP and XLM was stolen from his virtual currency wallet.

24. Specifically, on or about September 29, 2025, 92,090 XRP (equivalent to roughly $265,000 USD) was transferred from PO's wallet to a virtual currency address ending in vZfW.

25. On or about September 30, 2025, approximately 92,088 XRP was transferred from vZfW to a virtual currency address ending in Xnpw.

26. That same day, approximately 92,088 XRP was transferred through a series of six transactions from Xnpw to a cryptocurrency bridge called Bridgers.xyz. The funds were then received, through a series of transactions, by an address ending in DsU1 as USDT with a total value of approximately $260,000 USD. In other words, the XRP was converted into USDT using the bridge.

27. Within minutes of the funds being received by DsU1, there were transactions from DsU1 to two different addresses: 192,150 USDT was sent to an address ending in pc5k, and 95,971 USDT was sent to an address ending in 1dAk.

28. After pc5k received the 192,150 USDT, the next outbound transfer from pc5k was a transfer of 183,391 USDT to the Subject Address on or about September 30, 2025.

*Victim MM*

29. At all relevant times, MM resided in Florida.

30. On or about October 1, 2025, MM received a letter via U.S. mail that purported to be from Ledger, where he had a virtual currency wallet. The letter claimed that his wallet required an update and provided a QR code to be scanned to access the update.

31. When MM scanned the QR code, he was prompted to enter the password for his virtual currency wallet.

32. Believing that he was following instructions from a legitimate source, MM entered his password.

33. Soon after MM entered his password, approximately 1.47 BTC and 1,403 XRP (worth a total of approximately $178,000 USD) were stolen from him.

34. The 1.47 BTC (worth approximately $174,000 USD) that were stolen were sent from MM's address to an address ending in tm5f on or about October 2, 2025.

35. That same day, a total of 1.47 BTC was sent in two transactions from tm5f to the Bridgers.xyz cryptocurrency bridge.

36. Within minutes of the BTC being sent to Bridgers.xyz, a total of approximately 172,540 USDT (worth approximately $172,540 USD) was sent from an address associated with Bridgers.xyz to an address ending in wWYV.

37. The approximately 1,403 XRP (worth approximately $4,000 USD) that were stolen were initially sent from MM's address to an address ending in ZvHN on or about October 1, 2025.

38. From ZvHN, approximately 1,402 XRP was sent to an address ending in 6AXo on or about October 2, 2025.

39. About a minute later, approximately 1,401 XRP was sent from 6AXo to a cryptocurrency bridge called NEAR-Intents.

40. Moments later, approximately 4,160.16 USDT (worth approximately $4,160.16 USD) was sent from NEAR-Intents to the address ending in wWYV (where the approximately 172,540 USDT from Bridgers.xyz were also sent).

41. A few hours later, still on October 2, 2025, approximately 177,277 USDT (worth approximately $177,277 USD) was sent from wWYV to an address ending pc5k.

42. In pc5k the approximately 177,277 USDT was combined with a total of approximately 60,759 USDT from other sources, for a total of approximately 238,036 USDT.

43. Still on October 2, 2025, approximately 119,018 USDT (half of the 238,036

USDT) was then transferred from pc5k to the Subject Address.

44. The chart below summarizes the transactions described above.




*Seizure of Defendant Property*

45. On or about October 14, 2025, FBI seized, pursuant to a Federal seizure warrant, 183,391 USDT of the Defendant Property, which corresponded to the funds traced to victim PO.

46. Approximately one month later, FBI learned that MM was also a victim of the same scheme.

47. Accordingly, on or about March 12, 2026, FBI seized, pursuant to a Federal seizure warrant, the remaining Defendant Property from the Subject Address.

*Administrative Proceedings*

48. FBI initiated administrative forfeiture proceedings.

49. On August 31, 2026, FBI received a *pro se* administrative claim to the Defendant Property from PO.

50. PO's administrative claim asserts, *inter alia*, that approximately $295,382.57 was stolen from PO's crypto wallet.

51. As a victim, PO lacks standing to assert a claim in this civil forfeiture action. *See United States v. Real Prop. Located at 200 Meadowood Trail, Martinsville, Virginia*, 825 F. Supp. 3d 1239, 1254 (D. Utah 2026); *United States v. $16,816.30 in Funds Maintained in Bank of Am. Acct. No. xxxxxxxxxxxx, Held in Name of B.V. Ventures, LLC*, No. 1:22-CV-01760-SDG, 2023 WL 6613774, at *2 (N.D. Ga. Sept. 28, 2023); *United States v. Approximately $133,803.53 in U.S. Currency Seized from Washington Mut. Bank, N.A., Acct. #4420842802, held in the Name of Advantage Fin.*, 683 F. Supp. 2d 1090, 1095 (E.D. Cal. 2010). All victims' claims, including PO's claim, are more properly and equitably addressed as a whole via the U.S. Department of Justice's remission process. *See* 28 C.F.R. 9, *et seq.*

52. After receiving PO's administrative claim, however, pursuant to 18 U.S.C. § 983(a)(3), FBI referred the matter to the U.S. Attorney's Office for the Northern District of Georgia for judicial forfeiture.

**FIRST CLAIM FOR FORFEITURE**
**18 U.S.C. § 981(a)(1)(C)**

53. The United States re-alleges and incorporates by reference Paragraphs 1 through 52 of this Verified Complaint for Forfeiture as if fully set forth herein.

54. Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud).

**SECOND CLAIM FOR FORFEITURE**
**18 U.S.C. § 981(a)(1)(C)**

55. The United States re-alleges and incorporates by reference Paragraphs 1 through 52 of this Verified Complaint for Forfeiture as if fully set forth herein.

56. Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1341 (mail fraud).

**THIRD CLAIM FOR FORFEITURE**
**18 U.S.C. § 981(a)(1)(A)**

57. The United States re-alleges and incorporates by reference Paragraphs 1 through 52 of this Verified Complaint for Forfeiture as if fully set forth herein.

58. Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that it constitutes property, real or personal, involved in a transaction or attempted transaction in violation of

18 U.S.C. § 1956 (concealment money laundering), or is property traceable to such property.

**FOURTH CLAIM FOR FORFEITURE**
**18 U.S.C. § 981(a)(1)(A)**

59. The United States re-alleges and incorporates by reference Paragraphs 1 through 52 of this Verified Complaint for Forfeiture as if fully set forth herein.

60. Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that it constitutes property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 (transactional money laundering), or is property traceable to such property.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays:

(1) that the Court forfeit the Defendant Property to the United States of America;

(2) that the Court award Plaintiff the costs of this action; and

(3) that Plaintiff have such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

This 20th day of November, 2026.

Respectfully submitted,

THEODORE S. HERTZBERG
*Acting United States Attorney*
*600 U.S. Courthouse*
*75 Ted Turner Drive SW*
*Atlanta, GA 30303*
*(404) 581-6000 fax (404) 581-6181*

/s/NICHOLAS L. EVERT
*Assistant United States Attorney*
Georgia Bar No. 693062
nicholas.evert@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>*v.*<br><br>302,477.727217 USDT SEIZED FROM WALLET ADDRESS ENDING YFPP,<br><br>DEFENDANT. | Civil Action No. |

**VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Joshua Hodge, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 20th day of November, 2026.

Joshua Hodge
JOSHUA HODGE
Special Agent
Federal Bureau of Investigation